# STATE OF MICHIGAN

# COURT OF APPEALS

|  |  |
|---|---|
| *In re* EISA, Minors. | UNPUBLISHED<br>September 27, 2018<br><br>No. 342622<br>Berrien Circuit Court<br>Family Division<br>LC No. 2015-000129-NA |
| *In re* MILLER/EISA, Minors. | No. 342623<br>Berrien Circuit Court<br>Family Division<br>LC No. 2015-000129-NA |
| *In re* A. MILLER, Minor. | No. 342624<br>Berrien Circuit Court<br>Family Division<br>LC No. 2017-000030-NA |

Before: MURRAY, C.J., and CAMERON and LETICA, JJ.

PER CURIAM.

In these consolidated appeals, respondent-father appeals by right the trial court's order terminating his parental rights to ARE and AE in Docket No. 342622.[1] Respondent-mother appeals by right the trial court's order terminating her parental rights to BM, ARE, and AE in Docket No. 342623, and appeals by right the trial court's order terminating her parental rights to AM in Docket No. 342624. We affirm.

---

[1] The trial court also terminated the parental rights of the putative fathers of two of the children, but the putative fathers are not parties to these appeals.

# I. BASIC FACTS

In March 2008, respondent-mother took BM and traveled to Canada to meet with respondent-father, whom she had met online. Respondent-mother married respondent-father in an Islamic ceremony the next day but did not legally marry him. They lived together in Canada, and respondent-mother later gave birth to ARE and AE in Canada.

In 2012, the Canadian government deported respondent-mother and the children to the United States and deported respondent-father to Israel. It was undisputed that respondent-father sent money to support his children for some time but then discontinued support. Respondent-mother testified that it eventually became difficult to get respondent-father to communicate with his children. Respondent-mother obtained a religious divorce from respondent-father.

In November 2015, the Department of Health and Human Services (DHHS) investigated respondent-mother after it discovered that she was living in a filthy hotel room with the children, had no source of income beyond donations that she received from members of a mosque, and frequently left the children unsupervised. The DHHS petitioned for the removal of the children from respondent-mother's care after it learned that respondent-mother had been forced to leave the hotel room when it was declared uninhabitable and she began staying with her boyfriend, who was a registered sex offender.

The trial court held an adjudication trial in January and February 2016. The trial court found that DHHS had established by a preponderance of the evidence grounds for taking jurisdiction of the children. The trial court found that respondent-mother neglected or refused to provide proper care and custody, which caused the home to become uninhabitable, and that respondent-father was capable of supporting his children, but failed to do so.

The DHHS established case service plans for both respondents, and respondent-mother appeared to make some progress in rectifying the barriers to reunification. However, her progress was limited, and there was evidence that she lacked the insight to see how her behaviors contributed to the problems affecting the children. Similarly, there was evidence that respondent-father could not enter the United States, was not supporting his children, and was not benefiting from his parenting time via Skype. In April 2017, the DHHS filed a supplemental petition to terminate both respondents' parental rights.

During the pendency of these proceedings, respondent-mother gave birth to AM. DHHS petitioned for the child's removal and asked the trial court to terminate respondent-mother's parental rights to AM at the initial disposition.

In May 2017, the trial court gave notice that it intended to hold a combined trial, termination hearing, and possible disposition in both cases. The trial court held the combined trial and hearings over several days in July, August, and September 2017. In December 2017, the trial court found that the DHHS had established grounds for asserting jurisdiction over AM and found that the DHHS had established by clear and convincing evidence grounds for terminating both respondents' parental rights to all the children. The trial court entered orders terminating respondents' parental rights to the children in that same month.

Respondents then appealed in this Court.

## II. RESPONDENT-FATHER'S APPEAL

### A. PRESERVATION AND STANDARDS OF REVIEW

Respondent-father argues that the trial court erred in several respects when it terminated his parental rights to ARE and AE. Respondent-father did not have to take any special steps to preserve his challenge to the trial court's findings at the termination hearing, see MCR 2.517(A)(7), but he suggests on appeal that the trial court should have ordered additional services to allow parenting time in Israel, should have considered relative placement, and should have given him more time before proceeding to terminate his parental rights. He did not raise those issues before the trial court. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). As such, they are unpreserved. *Id.*; see also *In re Terry*, 240 Mich App 14, 26; 610 NW2d 563 (2000) (stating that a respondent must object to the case service plan in order to preserve a challenge premised on the failure to provide services that complies with the American Disabilities Act).

This Court reviews de novo a trial court's interpretation and application of the relevant statutes, but it reviews the factual findings underlying its application of the law for clear error. *In re Gonzales/Martinez Minors*, 310 Mich App 426, 430-431; 871 NW2d 868 (2015). A trial court's finding is clearly erroneous when, after reviewing the evidence in its entirety, this Court is left with the definite and firm conviction that the trial court made a mistake. *Id.* This Court reviews for clear error both a trial court's finding that a statutory ground has been proved by clear and convincing evidence and its finding that termination is in the child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). This Court also reviews for clear error the trial court's finding that DHHS made reasonable efforts to reunify the family. *In re Fried*, 266 Mich App 535, 542-543; 702 NW2d 192 (2005). This Court reviews unpreserved errors in a termination proceeding for plain error affecting substantial rights. See *Utrera*, 281 Mich App at 8. A plain error affects substantial rights if it affected the outcome of the proceeding. *Id.* at 9.

### B. ANALYSIS

The DHHS must prepare a case service plan with a schedule of services reasonably designed to facilitate the child's return to his or her home or placement before proceeding with disposition. *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010). Further, the respondent must be given a reasonable time to make changes and benefit from services. See *In re Powers*, 244 Mich App 111, 119; 624 NW2d 472 (2000). And the trial court should regularly update the plan to account for the respondent's progress and developing needs. *Mason*, 486 Mich at 156.

Respondent-father does not address the practical limitations with transporting the children to and from Israel for parenting time. The children are citizens of the United States and had been placed with foster parents in Michigan. The agency overseeing the proceedings and the trial court were located here. Respondent-mother and the children's siblings are also citizens of the United States and lived in Michigan. Despite all their connections to Michigan, respondent-father would have had the trial court uproot the children and force them to travel to Israel—presumably with some frequency—in order for him to have a better opportunity to demonstrate his fitness to parent. Respondent-father does not acknowledge the expert testimony on the

potential trauma that would be occasioned by the travel, culture shock, and separation from siblings and foster families. He also ignores the evidence that he had frequent contact with the children via Skype over the course of approximately one year. Despite that contact, he failed to attune with the children and developed only a minimal bond with them. He also appeared to lack empathy and had no understanding of the children's needs. Respondent-father's failure to make progress on his goal of better understanding his children's needs over the lengthy course of his contacts with the children by Skype was evidence that he was not yet ready to provide proper care and custody for the children. See *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003).

The record also shows that respondent-father stopped communicating with the children and stopped financially supporting them before DHHS became involved. He also chose not to support the children financially during the pendency of these proceedings. He further did not engage the children outside of the Skype contacts: he did not send letters, he did not send gifts, and he did not send cards. There was additional evidence that the trial court ordered a DNA test to prove paternity and facilitate the registration of the children as Israeli citizens, which was a preliminary step to placement in Israel. Yet respondent-father did not make any effort to ensure their registration and could not explain why he had not taken any steps to have the children visit. Given this evidence, the trial court did not plainly err when it did not take additional steps to send the children to Israel for parenting time. See *Utrera*, 281 Mich App at 8-9.

Similarly, the trial court did not prematurely order the termination of respondent-father's parental rights or err by failing to consider relative placement. However, the only relative placements mentioned by respondent-father would be with persons who were essentially strangers to the children. Placement with those persons would still involve relocating the children to Israel with the same problems and danger of trauma as those involved in placing the children with respondent-father. Respondent-father's failure to adequately identify a viable relative placement made such a placement dangerous and speculative. The trial court did not plainly err by refusing to consider it. *Id.* Likewise, the trial court had no obligation to wait any further before considering termination. The children had been in foster care for well over a year and, as a case worker aptly stated, respondent-father had not done "much of anything" to facilitate reunification with his children. The children should not be forced to linger in foster care on the mere possibility of a radical change in the circumstances. See *In re Williams*, 286 Mich App 253, 273; 779 NW2d 286 (2009).

The trial court also did not err when it terminated respondent-father's parental rights to the children under MCL 712A.19b(3)(c) and (g).

The trial court may terminate a parent's parental rights if it finds by clear and convincing evidence that the "parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and" the "conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." MCL 712A.19b(3)(c)(*i*).

The conditions that led to the adjudication were respondent-father's failure to maintain contact with the children and his failure to support them, which the trial found had contributed to their poor living conditions. The evidence showed that the children had been in care for significantly longer than 182 days and that the conditions that led to the original adjudication had not changed. Respondent-father still could not travel to the United States, had not registered the children as Israeli citizens, and did nothing to support the children even though he testified that he had a job that enabled him to do so. The evidence that he had taken part in a parenting class in Israel and that he had suitable housing did not rectify those barriers to reunification. The evidence showed that respondent-father had only a minimal bond with the children and that he was completely out of touch with their needs. There was also testimony that the shock that would be occasioned by separating the children from each other and transplanting them in Israel would cause significant trauma to the children. Further, respondent-father's relatives there were essentially strangers to the children. That respondent-father had done nothing to support the children financially and had only minimally bonded with them despite engaging with them in over a year of communications via Skype was evidence that the conditions that led to the adjudication had not been rectified and that there was "no reasonable likelihood that the conditions [would] be rectified within a reasonable time considering the [children's] age." MCL 712A.19b(3)(c)(*i*). The trial court did not clearly err when it found that the DHHS proved this ground for termination by clear and convincing evidence. *Gonzales/Martinez*, 310 Mich App at 430-431.

As the trial court recognized, this same evidence established grounds for termination under MCL 712A.19b(3)(g), which provided at the time that the trial court might terminate a parent's parental rights if the "parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age."[2] By his own admission, respondent-father had the ability to support his children but chose not to do so. He also chose not to communicate with them through letters, did not send cards or gifts to them, and he failed to develop anything more than a minimal bond after a year of parenting time via Skype. The evidence demonstrated that he had essentially abandoned his children before these proceedings and that he could not show that he was ready, willing, and able to provide them with proper care and custody either in the United States or in Israel. His failure to establish anything more than a minimal bond with his children and his lack of empathy for their situation was evidence that he would continue to neglect their care and custody for the foreseeable future. The trial court did not clearly err when it found that DHHS had established grounds for termination of respondent-father's parental rights under MCL 712A.19b(3)(g). See *Gonzales/Martinez*, 310 Mich App at 430-431.

Respondent-father also states that the trial court should not have found that termination was in the children's best interests. The trial court had to terminate respondent-father's parental rights after it found that DHHS had proved grounds for termination if it also found "that

---

[2] The Legislature amended this ground for termination with 2018 PA 58, which became effective June 12, 2018.

termination of parental rights [was] in the [children's] best interests." MCL 712A.19b(5). The trial court may consider a variety of factors in finding whether termination is in the children's best interests: it may consider the "child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Gonzales/Martinez*, 310 Mich App at 434 (quotation marks and citation omitted).

Respondent-father maintains that it was not in the children's best interests to terminate his parental rights because he presented evidence that he made a substantial effort on the areas of concern and, given that evidence, the trial court should have delayed termination. However, there was conflicting evidence about the strength of the bond between respondent-father and the children. There was also testimony that respondent-father was detached and verbally abusive even when he lived in the same household as the children. Likewise, evidence demonstrated that he failed to support his children financially or emotionally during the pendency of these proceedings and that he lacked empathy for their situation. It was for the trial court to assess the weight and credibility of the evidence and resolve any conflicts; and this Court will defer to the trial court's special opportunity to judge the evidence. See MCR 2.613(C); *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). Given the record evidence, the trial court could reasonably reject respondent-father's contention that he made substantial efforts to rectify the barriers to reunification.

The evidence showed that the children had been in foster care for months while respondent-father did nothing to support them and little to rectify the barriers that prevented him from being reunited with them. The evidence established that respondent-father would not be able to travel to the United States within a reasonable time. He further failed to take even the preliminary steps to enable the children to live with him in Israel. In any event, there was evidence that the children would be traumatized if separated from their siblings and forced to live in Israel. The evidence showed that it was in the children's best interests to be placed in a safe and stable home environment as soon as practicable and that respondent-father could not provide such a home in Israel for the foreseeable future. Under these circumstances, the trial court did not clearly err when it found that termination of respondent-father's parental rights was in the children's best interests. *Olive/Metts*, 297 Mich App at 40.

### III. RESPONDENT-MOTHER'S APPEALS

On appeal, respondent-mother does not identify any errors involving the trial court's order terminating her parental rights to BM, ARE, or AE. She argues that the trial court violated her constitutional right to due process when it terminated her parental rights to AM without first holding an adjudication trial and taking jurisdiction over AM. This Court reviews de novo a trial court's interpretation and application of the relevant statutes. *Gonzales/Martinez*, 310 Mich App at 430-431. This Court also reviews de novo questions of constitutional law. See *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006).

Child protective proceedings are conducted in two phases: the adjudicative phase and the dispositional phase. "The adjudicative phase determines whether the [family] court may exercise jurisdiction over the child. If the court acquires jurisdiction, the dispositional phase determines what action, if any, will be taken on behalf of the child." *In re Brock*, 442 Mich 101, 108; 499

NW2d 752 (1993). There are significant differences between the two phases. A respondent may demand a jury in the adjudicative phase, but the trial court decides the dispositional phase. *Id.* As for the burden of proof, the petitioner must establish by a preponderance of the evidence a statutory ground for jurisdiction during the adjudicative phase, but the petitioner must establish a ground for termination by clear and convincing evidence during the dispositional phase. *AMAC*, 269 Mich App at 536-538. Additionally, the rules of evidence apply at the adjudication trial, but generally do not apply at the dispositional hearing. *Id.*

The family court may take jurisdiction over a juvenile under "18 years of age found within the county:"

> (1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. . . .

> *   *   *

> (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. . . . [MCL 712A.2(b).]

The family court's subject-matter jurisdiction "is established when the action is of a class that the court is authorized to adjudicate, and the claim stated in the [petition] is not clearly frivolous." *In re Hatcher*, 443 Mich 426, 437; 505 NW2d 834 (1993). The trial court conducts a formal review of the petition at a preliminary hearing and, once the trial court makes a finding of probable cause that the facts alleged in the petition are true and would establish jurisdiction if proved at the adjudicative trial, it assumes temporary jurisdiction until the adjudicative trial. *Id.* at 434-436. These procedures provide the parent with adequate safeguards to review and challenge the trial court's exercise of discretion. *Id.* at 436.

In March 2017, the DHHS filed a petition for the removal of AM from respondent-mother's care and asked the court to terminate her parental rights at the initial disposition. The DHHS alleged facts that, if proved true, would establish the trial court's jurisdiction over AM. Further, the trial court held a preliminary hearing and found that there was probable cause that the facts alleged in the petition were true. Thereafter, the trial court gave notice in May 2017 that it would be conducting a combined trial, termination hearing, and possible disposition in July 2017. Consequently, respondent-mother was on notice that the trial court intended to hold a trial to consider taking jurisdiction over AM. Notably, there is no indication that respondent-mother requested a jury trial. See MCR 3.911(B).

On appeal, respondent-mother argues that the trial court never had jurisdiction over AM because respondent-mother did not make any admissions and the court did not find that the child came under its jurisdiction. She asserts that the trial court did not have jurisdiction "because a

trial was never held," which—she maintains—violated her right to due process. She suggests that it was unclear from the record whether the failure to hold a trial was an "oversight" and states that the trial court simply "allude[d]" to an adjudication. We disagree; the trial court held an adjudication trial and made the necessary findings to assert jurisdiction.

The trial court gave notice that it would be conducting the adjudicative trial with the termination hearing in the companion case and also gave notice of possible disposition. Further, in December 2017, after several days of testimony, the trial court orally stated its findings and conclusions of law. The trial court specifically identified the case involving AM and related that it had to consider whether it had jurisdiction under MCL 712A.2(b). It then identified a basis for exercising jurisdiction, in particular anticipatory neglect, and found that the DHHS proved by a "preponderance of the evidence" a "statutory basis for the Court's jurisdiction." See e.g., *In re Gazella,* 264 Mich App 668, 680; 692 NW2d 708 (2005), superseded by statute on other grounds in MCL 712A.19b(5) (concluding that "[a] child may come within the jurisdiction of the court solely on the basis of a parent's treatment of another child"). The trial court explained that "based upon the legally admissible evidence, testimony of the case worker, [and the] concurrent case services plan previously referenced," it could exercise jurisdiction over AM because "[c]ase law would support that treatment of one child may be deemed to be indicative and predictive of treatment of another." It is, therefore, evident that the trial court considered the hearing held over several days in July, August, and September 2017 to have included an adjudication trial. Moreover, although not the model of clarity, the trial court found that it had jurisdiction under MCL 712A.2 before proceeding to examine whether the DHHS proved a statutory ground for termination under MCL 712A.19b(3).

In her brief, respondent-mother also argues that holding a concurrent adjudicatory/termination trial violates "statutory requirements and court rules." But she fails to cite a single rule or statute and never separately raises this issue in her statement of questions presented. Therefore, her argument is abandoned. *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959); *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008) ("A party abandons a claim when it fails to make a meaningful argument in support of its position."); MCR 7.212(C)(5).

In any event, any error was harmless. This Court has recognized that a trial court may hold a dispositional hearing immediately after the adjudicative trial. *AMAC*, 269 Mich App at 538. The Court in *AMAC* clarified that the dispositional phase must be conducted in such a way that the respondent has the opportunity to present evidence and arguments relevant to that phase of the proceedings. *Id.* at 538-540. A trial court cannot hold a dispositional hearing and then consider whether it had jurisdiction—a determination made after the adjudicative phase—as an afterthought. See *In re Thompson*, 318 Mich App 375, 379; 897 NW2d 758 (2016). The trial court must ensure that the two phases remain distinct, and it errs when the two phases converge in such a way that they lose their separate character. *Id.*

Here, the trial court combined the dispositional phase of the case involving BM, ARE, and AE with the adjudicative and dispositional phases of the case involving AM. At first blush,

a multi-day hearing might make it somewhat challenging to discern whether and how the trial court applied the rules of evidence, and difficult to assess the burdens, evidence, and arguments applicable to each phase.[3] However, vacation of the order terminating respondent-mother's parental rights to AM is not necessary because any error was harmless under MCR 2.613(A). See MCR 3.902(A).[4] The harmless-error standard provides:

> An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice. [MCR 2.613(A).]

Affirming the order terminating respondent-mother's parental rights would be consistent with substantial justice. MCR 2.613(A); *Utrera,* 281 Mich App at 14. Respondent-mother had notice that the trial court intended to hold a hearing and take jurisdiction over AM at the termination hearing. Although the rules of evidence did not apply to the termination hearing of AM's half-siblings, they did apply during the adjudicative and termination phases of AM's hearing. Compare MCR 3.972(C)(1) and 3.977(E)(3) with MCR 3.977(H)(2). We "assume that the trial court knew the law and considered only the evidence properly before it[.]" *In re Archer,* 277 Mich App 71, 84; 744 NW2d 1, 10 (2007). The record below confirms it did. As already discussed, respondent-mother did not request a jury trial, and the trial court properly assumed jurisdiction over AM relying "upon the legally admissible evidence, testimony of the case worker, [and the] concurrent case services plan previously referenced[.]" Only then did the trial court determine there were statutory grounds to terminate respondent-mother's parental rights to AM, "relying, again, upon legally admissible clear and convincing evidence." Thus, whether the trial court made the adjudicative determination at the beginning of the termination hearing rather than after closing arguments would have made no difference to the outcome. Either way, the trial court would have been able to exercise jurisdiction and terminate respondent-mother's parental rights to AM. Therefore, any error as to the trial court's procedural process was harmless, and vacation is not required.

## IV. CONCLUSION

Because respondent-father has not shown that the trial court erred when it terminated his parental rights to ARE and AE, we affirm in Docket No. 342622. Similarly, because respondent-mother did not identify any claims of error involving the trial court's decision to terminate her parental rights to BM, ARE, and AE, we affirm in Docket No. 342623. And, because the trial

---

[3] In the future, a trial court could facilitate appellate review of issues arising from a single hearing by clearly indicating on the record when the move from adjudication to disposition occurs.

[4] MCR 3.902(A), which governs juvenile code proceedings, states that "[l]imitations on corrections of error are governed by 2.613."

court properly adjudicated respondent-mother before terminating her parental rights to AM, we affirm in Docket No. 342624.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Anica Letica